**SAMS, Plaintiff-Appellee, v. HUGHES, Defendant-Appellant.**

Ohio Appeals, Fourth District, Highland County.

No. 119.   Decided March 23, 1950.

Harold A. Predmore, Hillsboro, Rendigs & Fry, Cincinnati, for appellee.

Hugh H. Altick of Matthews & Altick, Dayton, Eugene A. Hahne, Hillsboro, for appellant.

## OPINION

By METCALF, J.

This appeal grows out of an action brought by Donald C. Sams, father of a minor daughter six years of age to recover for medical, hospital, nursing and other expenses incurred by him by reason of injuries sustained by said minor as a result of being struck by an automobile, owned by the defendant-appellant, Ferris L. Hughes, but which was being driven by Edward Barrett, a garage and filling station operator, who was delivering the automobile to defendant's residence after the same had been repaired in a garage operated jointly by Barrett and one Woodrow Reno.

The jury found in favor of the plaintiff and returned a verdict against the defendant in the sum of $8,772.00, and it is from this verdict and judgment thereon that this appeal stands on questions of law. While there are six separate assignments of error counsel for both parties agree that the assignments present only two questions of law, there being no dispute of any consequence relative to the facts involved in the instant appeal. These questions are, first, did the trial court err in deciding that the driver of the automobile was the agent of defendant-appellant rather than an independent contractor, in the operation of appellant's automobile at the time of the accident? Second, did the trial

court err in refusing appellant's Special Charge Number 2? We will dispose of this second question by simply stating that an examination of this Special Charge Number 2, while perhaps not so intended, is confusing in that it throws upon this minor child at least some degree of care, and can easily be interpreted as charging her with being capable of contributory negligence which by reason of her infancy she can not be so charged. It is true it contains the word 'solely,' in reference to the cause of such injuries yet, in our opinion, its lack of clarity made mandatory the court's refusal to give it.

The one important question in this case is whether Barrett, the driver of the car, was at the time of the accident an independent contractor or the servant of the defendant.

The defendant is a farmer residing two and one-half miles south of Hillsboro, Ohio. Edward Barrett was on the 2nd day of May, 1946, the time of the accident involved herein, the proprietor of a filling station with a small garage combined located on North High Street in Hillsboro called the Barrett Service Station. Barrett operated the service station individually but he together with one Woodrow Reno, an automobile mechanic, operated jointly the garage part thereof, Reno making repairs on cars brought there for that purpose. The record indicates that Reno had nothing to do with the filling station part of the business it being operated independently by Barrett.

On the morning of the above date the defendant Hughes brought his automobile to this garage to be repaired; Barrett was not there at the time and the only contact had by the defendant was with Reno.

On the question of the delivery of the car after the completion of the repairs the defendant Hughes testifies that:

"When he (Reno) drove up he asked me if I wanted him to call me when he got it done. I said, you probably won't get it done today. He said, I will bring it out. Now that was just the words he said, 'I'll bring it out.' I said 'O.K.' "

Mr. Reno testifies:

"Well, say I asked Mr. Hughes if he wanted the car delivered and Mr. Hughes said O.K."

Reno further testifies that he told his partner Barrett that the automobile was to be delivered, that he had no instructions as to the manner or mode in which the car was to be driven, nor the route over which it was to be driven. That it was customary, with the authority of the owner, in the operation of the Barrett Service Station garage business, to often deliver customers' automobiles without charge after the repairs were completed and that the same was done as a courtesy on the part of the garage.

The repairs to the automobile were completed by Reno and about 12:30 of that day Barrett drove the automobile from the garage with the purpose of delivering it to the residence of the defendant. Barrett testifies by deposition and states in substance that he chose the route and the manner and mode of driving in the delivering of the automobile to the defendant, Hughes. As he proceeded southwardly on High Street in Hillsboro it struck and injured plaintiff's daughter who was running westwardly across this street at a point not at an intersection or cross walk.

It should be noted that the defendant moved for a directed verdict at the close of all the evidence, moved for a judgment notwithstanding the verdict, and moved for a new trial, all of which were overruled.

Counsel for both parties joined, since the facts were not in conflict, in asking the court to declare as a matter of law what relationship existed as between the defendant and the driver of the car, Barrett. Under such circumstances it then became the duty of the trial court to charge the jury the result that must follow on application of the law to the facts so established; and, where the question is whether the relation of master and servant or that of independent contractor arises by reason of such facts, the trial court should say to the jury which relation exists; Schickling, an Infant v. The Post Publishing Company, 115 Oh St 589, 155 N. E. 143. And this the trial court did in its general charge, when instructing upon the essential elements that the plaintiff must prove the following language.

"1. That the driver of the automobile was acting as defendant's agent at the time of the accident.

"And now since there is no conflict in the testimony as to that, the Court has found that he was so acting as agent, and, therefore, the principal is liable for any negligence of this agent. That eliminates that issue."

In determining the correctness of this charge an examination of the rules promulgated by the Supreme Court of Ohio, distinguishing the relationship of master and servant from that of employee and independent contractor, is imperative. In Miller v. Metropolitan Life Ins. Co., 134 Oh St, 289, 12 O. O. 93; 16 N. E. (2nd) 447, the court says on page 291 that:

"The relation of principal and agent or master and servant is distinguished from the relation of employer and independent contractor by the following test: Did the employer retain control, or the right to control, the mode and manner of doing the work contracted for?' If he did, the relation is that of principal and agent or master and servant. If he did not but is interested merely in the ultimate result to be accomplished,

the relation is that of employer and independent contractor."

The Supreme Court in **Gillum v. The Industrial Commission,** **141 Oh St, 373, 25 O. O. 531, 48 N. E.** (2nd) 234 again announced the test in determining whether one is an independent contractor or servant in the second paragraph of the syllabus, it reads:

"2. Whether one is an independent contractor or in service depends upon the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created."

The defendant's automobile was delivered to the garage for repair and thereby a contract of bailment was created, one of the implied terms of which is a delivery back of this automobile to its owner. This may be done upon the premises of the garage by placing the automobile where it is accessible to its owner or at any other place agreed upon by the bailor and bailee. The delivery of this automobile was as much a part of the contract of bailment as the repairs that were to be made. The garage man was under no obligation, contractual or otherwise, in the first instance, to offer to return or deliver the automobile to the defendant at his farm home. He volunteered to do this in lieu of telephoning and the owner accepted the offer. That it was without extra remuneration or was done, according to the testimony of Reno, to accommodate customers when they were able to do so is beside the point. It is strenuously urged by counsel for appellee that there were two separate contracts entered into on the morning this car was delivered for repairs. One of bailment for the purpose of repairing thereby creating the relationship of independent contractor and one to deliver the car to the farm home as the agent or servant of the owner.

It seems to the majority of this court that whichever view is taken of the arrangement entered into on the morning the defendant brought his car to the garage for repairs, that is whether there were two separate contracts, one of bailment and one for delivery, or whether as contended by defendant it was one contract, the result will be the same. The terms of the contract or contracts as completed provide only that the garage should make the repairs and deliver the car to its owner at his home. Only the 'result' was agreed to, the repair and the delivery of the car, the details of making delivery, the manner and mode thereof, were left entirely to the dis-

cretion of the garage without retention or reservation on the part of Hughes. Reno could deliver this car himself or send another under the contract and he chose to send his partner, Barrett. The features of the trip such as to route, the speed, the stops, if any, were left to the uncontrolled discretion of the garage. It is urged by the plaintiff's counsel in their brief and oral argument that even though this is so the right to control the same remained with the defendant Hughes. This interpretation is in conflict with the terms of the agreement applying to the delivery of this car. There is no question but what Hughes could have reserved the right to control the manner and mode of delivering this car, the route to be driven and all other incidental features appertaining thereto but this right was not reserved nor provided for in the contract between the defendant and the garage, either express or implied.

The question is not what right of control the defendant Hughes could have provided for in the contract of delivery, but rather is what, if any, right of control did he exercise or reserve in the contract of delivery. The contract is void of any such control or right to control. The reason for this is manifest and can be expressed in no better terms than that in which counsel for plaintiff have set forth in their well written brief, although, of course, it is intended to substantiate their claim of the 'existence' of control. This paragraph in the brief of counsel for plaintiff reads:

"The situation was such that there was no need for Hughes to exercise his right of control. He evidently assumed that the car would be driven lawfully and over the most direct route to his home. Having placed his trust in the garage to properly repair his car, it cannot be said to be unusual that he did not delineate in minute detail the exact manner or route over which he wished his car to be driven upon its return to his farm."

The fact is that not only did the defendant fail to delineate in minute detail but he in no way exercised nor did he reserve the right to exercise any control. The Supreme Court of Wisconsin in the Ederer case, infra, under circumstances similar to the instant appeal gave as one of its reasons for holding that the garage was an independent contractor a similar statement as to why the owner of an automobile has the right to assume that the car would be driven lawfully, i. e., "The risk which the law puts upon the owner of an * * * automobile is, upon principals of justice and good sense, no longer his when he turns his automobile over to a garage, repair shop, or service station for repairs or servicing." Citing a long list of decisions from various jurisdictions upholding this principal.

We agree with counsel for appellee that the situation was such that there was no need for Hughes to exercise any right of control, but insist that this right is not something that can be pulled out of thin air but its existence must be determined from the contract that creates the relationship. The words and statements of the defendant and Reno, admitted by all counsel to be true, yield to no other interpretation than that the manner or mode of doing both the repair job and the delivery of the automobile to defendant's home thereafter were left solely to the garage and the garage was responsible only to the defendant for the result.

In Rich v. Holmes, et al. the Supreme Court of Vermont (1932) 160 Atlantic 173 held:

"Determination of whether independent contractor or master and servant relationship exists depends on whether alleged master has right to control not only result, but also method adopted to accomplish result."

"2. Repairman in pursuit of undertaking to deliver repaired automobile to owner held 'independent contractor,' not 'servant' and 'agent' or owner."

Since the test of whether the driver of the automobile is an agent or independent contractor as laid down in the Rich case, supra, are similar to those of Ohio we take the liberty of quoting from the body of the opinion the comment of the court on the question of control or right to control being reserved to the owner.

"(2) With this crucial test in mind, it only remains to apply it to the facts as stated. The defendant contends that the arrangement for delivery of the car at Pittsfield was a modification of the original contract of bailment, and should be considered and construed as a part of it. But the plaintiff argues that the undertaking for delivery was separate and distinct from the contract for repairs. We think that the plaintiff's version of the contract is correct, but, whichever view is taken of it, the result will be the same. The terms of the contract as completed provided only that Allen should make delivery of the car to Holmes at Pittsfield, and receive compensation therefor. Holmes specified only the result, which was delivery at Pittsfield. The details of making delivery were left entirely to the control of Allen, he could go himself or send another driver; he chose to go himself. The features of the trip were left to Allen without right of control by Holmes. In those matters he was his own master. The route which he took was of his own selection; the speed of the car and the stops which he made were left to his own uncontrolled discretion. The plaintiff says that Holmes might have stopped Allen at any point of the journey and directed a different place of

delivery. This contention is in conflict with the terms specifically agreed upon, and no right was reserved to change it. The contract could be changed in that respect only by putting an end to it, either by cancellation or substitution."

Counsel for both parties states that this is a case of first impression involving the same factual situation in Ohio. However, we are not without precedent in many of the other jurisdictions in addition of the Rich case, supra. In Gatz v. Smith, 205 S. W. (2nd) 616, decided by the Court of Civil Appeals of Texas (1947) it was held:

"2. Although repairman, who had received automobile as a bailee to repair it, was not under obligation, either by contract or by local custom, to deliver automobile to owner at any place except repair shop, repairman had a right to return automobile to owner at another garage without charge for such service, **without effecting an alteration of the relationship.**"

"3. Where repairman as a matter of accommodation agreed to return automobile to owner at a different garage and retain possession of automobile for that purpose and directed an employee to make delivery, and employee struck plaintiff with automobile while making such delivery, repairman, rather than owner of automobile, was responsible for negligence of driver, **since possession was still that of repairman.**" (Emphasis ours.)

In Daigle v. Pelletier, 31 Atlantic (2nd) 345, decided by the Supreme Judicial Court of Maine (1943) it was held:

"2. Where custodian of city's fire truck took it to repair shop of garage to have battery charged, and truck was accepted for servicing by repairman, there was a 'bailment,' and in absence of exercise of any control by custodian, garage proprietor and repairman were 'independent contractors' whose negligence in operating the truck was not imputable to custodian."

"3. An essential element of every contract of bailment of an automobile for repairs is bailee's agreement to return automobile to bailor or his authorized representative, **and if place of return is designated in contract, contract is not completed until delivery at such place has been made.**" (Emphasis ours.)

The Supreme Court of Rhode Island in Conant v. Giddings, 13 Atlantic (2nd) 517 held:

"Generally, apart from statutory regulation, a garageman, who takes an automobile to his garage to be worked on, and over whom the automobile owner has no control as to the performance of the work or the operation of the automobile is an 'independent contractor' and not a 'servant' or 'agent'

of the owner, **who is, therefore, not liable for any negligence of the garageman during the trip."** (Emphasis ours.)

The Supreme Court of Wisconsin in Paine v. Finkler Motor Car Co. Inc. (1936) 264 N. W. 477 Held:

"When an automobile is delivered for repairs to a public garage or its employee, bailment is created which places the responsibility for negligence in driving automobile by garage employees upon the garage keeper, under rule of respondeat superior."

The Supreme Court of Wisconsin (1936) also held in Ederer v. Milwaukee Inc. Co., 265 N. W. 694, that:

"Automobile owner is liable only for his own negligence or that of his agent or employee acting within scope of employment, and not for negligence of owner of garage or service station operating automobile as independent contractor."

In 46 A. L. R. 849 the question involved in this case is annotated. This annotation is headed by the statement that "as a general rule the owner of a car is not liable for the negligent driving of his car by a person in the general employment of a garage man while getting or delivering this car." And the cases cited thereunder warrant this statement.

Counsel for both parties have been helpful to the court in briefing the law from other jurisdictions as well as the text law they feel applies to their respective positions. Appellee has set forth several decisions from other jurisdictions that would appear to be contrary to the conclusion reached by a majority of this court but an analysis of these cases reveal that they are clearly distinguishable, either because of the factual situation, the formula to be applied, or the law of that particular jurisdiction making the issue involved not as it arises in this appeal but one of fact for the jury.

A majority of this court is forced to the conclusion that Edward Barrett while in the process of delivering defendant's car was an independent contractor and as such his negligence, if any, cannot be imputed to the defendant. That the trial court was in error in charging the jury that the relationship of principal and agent existed between the defendant and Barrett. That the jury should have been charged in words and effect that the relationship was one of an independent contractor and not as servant of this defendant. Of course, such a charge would have terminated the case. In other words, in the opinion of this court the motion for a directed verdict in favor of the defendant should have been granted. Not having done this, judgment non obstante veredicto would have been in order.

The charge on the relationship existing between the defendant and Barrett, as well as the rulings on the various motions

just herein enumerated are erroneous and prejudicial. There is no conflict in the evidence on this material question, it presents purely a question of the application of the legal formula to these facts which we resolve against the plaintiff and therefore the judgment of the common pleas court should be and hereby is reversed and judgment rendered for defendant appellant.

Judgment reversed and judgment for appellant.

GILLEN, J, concurs.
McCURDY, PJ, dissents.

McCURDY, PJ, dissenting. Jurisdictions which attempt to resolve facts similar to the instant case by confining the situation created to the law of bailments, by necessity must ignore the proposition that the bailee, under proper circumstances at the termination of his work for which the bailment was made, does, if the parties so agree, take off his cloak of bailment and put on the cloak of agent.

The reasoning that should be applied in this case has been adopted in many jurisdictions, and is to the effect that a bailment of the automobile is made when it is delivered to the mechanic for the purpose of making repairs and continues in force until the repairs are completed. Ordinarily delivery would terminate the bailment, but where by agreement of the parties the owner does not return to get his car, and specifies, separate and apart from the contract for repairs, that the car be delivered to him, then in that event the bailment terminates upon the completion of the repairs. The repairman becomes the agent of the owner in making the delivery of the automobile to the owner, even though such delivery is in the nature of an accommodation or a favor.

In this case there is no dispute about the facts. The defendant Hughes, after making the contract for repairs, stated to the repairman, "You probably won't get it done to-day," whereupon the repairman replied "I will bring it out." To this offer of accommodation the owner of the automobile, the defendant, stated "O.K." It must be noted that this conversation took place at a time when the repairman asked the owner Hughes if he wanted him to call him when he got it done. Clearly the arrangements for delivery followed the contract for repairs, and the proper interpretation is that it was not a part of it.

Hughes constituted the repairman his agent and could have exercised full direction and control over him for the purpose of delivering his car. This right he did not have while a bailment for the purpose of repairs was in force. It was

during the time when the owner of the car could have exercised control over his agent, that the agent repairman in driving the car struck the child.

Under such circumstances to hold that the bailment, which was created for the purpose of making repairs, continued until the time of the delivery of the car to the owner, Hughes, on the theory of law that a bailment continues until delivery by the bailee to the bailor, regardless of the arrangement between the parties in relation to delivery, is not sound, and ignores the facts.

The Trial Court properly charged the jury in this regard, and the judgment should be affirmed.

For the foregoing reasons, briefly stated, we feel compelled to dissent in this case.